# UNITED STATES DISTRICT COU8RT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| EDGAR NARANJO, | ) |
|  | ) |
| Plaintiff, | ) No. 08 C 7358 |
| v. | ) |
|  | ) Hon. Marvin E. Aspen |
| TERRY MCCANN, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## <u>MEMORANDUM ORDER AND OPINION</u>

MARVIN E. ASPEN, District Judge:

Edgar Naranjo ("Petitioner" or "Naranjo"), a prisoner at Stateville Correctional Center in Joliet, Illinois, now petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254. As set forth below, we deny Naranjo's petition.

## BACKGROUND

Following a bench trial, Naranjo was convicted of first degree murder and residential burglary. (Resp. Ex. A, Order of App. Ct. on Direct Appeal, *People v. Naranjo*, No. 1-04-1137, 1 (1st Dist. Nov. 30, 2005).) The judge sentenced him to a 40-year term on the murder conviction and a 10-year term on the burglary conviction, to be served consecutively. (*Id.* at 1.)

On appeal the conviction for residential burglary was vacated on the one-act, one-crime rule.[1]
(*Id.* at 10.)  The facts underlying Naranjo's conviction are as follows.[2]

Naranjo and his 14-year-old co-felon, Juan Salazar ("Salazar"), broke into the home of
Juan and Juana Balbontin on October 4, 2002.  (*Id.* at 1.)  Prior to this day, Naranjo had met Juan
Balbontin at a flea market where Naranjo sold cologne.  (*Id.* at 2.)  Through the course of their
dealings, Naranjo became aware of $2000-$3000 worth of cologne stored at the Balbontin's
house.  (*Id.*)  Naranjo subsequently enlisted Salazar in a plan to steal the cologne.  (*Id.*)

On the morning of October 4, 2002, Naranjo borrowed a car and obtained a pellet gun.
(*Id.*)  Before going to the Balbontin home, Naranjo called to make sure that Juan was at home.
(*Id.*)  When Naranjo and Salazar arrived at the home, Juana Balbontin answered the door.  (*Id.*)
Naranjo and Salazar forced their way in.  (*Id.*)  Juana screamed and yelled, "they have a gun."
(*Id.* at 3.)  The Balbontin's son, Rafael Balbontin, an off-duty Chicago Police officer, came up
from the basement with his gun and announced "Chicago Police."  (*Id.*)  At this point, Naranjo
and Salazar fled and continued running despite Rafael's orders to freeze.  (*Id.*)  Rafael chased
them and saw one of the men "turn[] around really quick and 'crouch[] a little.'"  (*Id.*)  Rafael
then began to shoot.  (*Id.*)  Salazar fell after being hit with multiple gunshots and Naranjo
sustained a shot in the hand.  (*Id.*)  Naranjo picked up Salazar and carried him to the car.  (*Id.*)
He then drove off and later dumped Salazar's body in an industrial area.  (*Id.*)

After his bench trial, Naranjo was found guilty of count 1 (first degree murder predicated
on home invasion), count 7 (home invasion), count 9 (residential burglary) and count 11

---

[1] The one-act, one-crime rule prohibits a defendant from being convicted of multiple offenses if
the convictions are all based on the same physical act.  (Resp. Ex. A at 8.)

[2] The state court's account of the facts is presumed correct, because it has not been rebutted by
clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S.
539, 547, 101 S. Ct. 764, 769-70 (1981).

(attempted armed robbery).  (*Id.* at 4.)  Counts 1 and 7 were merged, resulting in a 40-year sentence and counts 9 and 11 were merged, resulting in a 10-year sentence, to be served consecutively.  (*Id.*)

On direct appeal, Naranjo argued that: 1) the State did not prove felony murder beyond a reasonable doubt; and 2) his conviction for felony murder and residential burglary violated the one-act, one-crime rule.  (Resp. Ex. B, Pet. App. Br., 3.)  The appellate court affirmed with respect to Naranjo's first issue but vacated the residential burglary conviction and sentence because the "offenses of felony murder based on home invasion and residential burglary are carved out of the same physical act and . . . should have been merged."  (Resp. Ex. A at 10.)

Naranjo then filed a Petition for Leave to Appeal ("PLA") to the Supreme Court of Illinois, arguing that the proximate cause theory of liability in criminal convictions afforded the defendant less rights than a similarly-situated defendant in a civil matter.  (Resp. Ex. E, Pet. Direct PLA, 2.)  He asked the Supreme Court to "harmonize the standard of proof" required of foreseeability in both civil and criminal cases and clarify what elements the State was required to prove in criminal cases.  (Resp. Ex. E. at 1.)  The court denied the petition.  (Resp. Ex. F, Ltr. of Denial, Sept. 27, 2006.)

After exhausting his state court remedies on direct appeal, Naranjo filed a petition in the Circuit Court of Cook County for Post-Conviction Relief pursuant to Illinois' Post-Conviction Hearing Act ("Act"), 725 ILCS 5/122.[3]  (Resp. Ex. G, Post-Conviction Pet., *People v. Naranjo*,

---

[3] The Post-Conviction Hearing Act, 725 ILCS 5/122, provides defendants a remedy for challenging their convictions or sentences on federal or state constitutional law grounds.  *People v. Barrow*, 195 Ill. 2d 506, 518-19, 749 N.E.2d 892, 901 (2001).  A post-conviction petition is not an appeal from the underlying judgment, but rather a collateral proceeding to inquire into constitutional issues that were not, and could not have been, determined on direct appeal.  *Id.* at 519.  This Act is intended to "provide for judicial review in circumstances where direct review, habeas corpus and *coram nobis* were unavailable."  *People v. Martin-Trigona*, 111 Ill. 2d 295, 302, 489 N.E.2d 1356, 1359 (1986).

No. 02 CR 27730 (Cook Cty. Cir. Ct. Mar. 12, 2007).) Naranjo alleged six grounds for relief: 1) the indictment did not set forth the elements of the statute in violation of the Due Process clauses of the United States and Illinois Constitutions; 2) the State failed to prove defendant guilty of first degree murder as defined by the statute; 3) ineffective representation by trial counsel, who failed to contest the indictment; 4) ineffective representation by appellate counsel, who failed to raise effectiveness of trial counsel's failure to contest the indictment; 5) ineffective representation by appellate counsel, who failed to contest the invalidity of the indictment to Appellate Court and Supreme Court of Illinois; and 6) the order of the Appellate Court affirming Naranjo's conviction denied him the right to know the nature and cause of the accusation and violated due process. (*Id.* at 10-13.) The Circuit Court dismissed Naranjo's petition. (Resp. Ex. H, Order of Cir. Ct., *People v. Naranjo*, No. 02 CR 27730 (Cook Cty. Cir. Ct. Apr. 13, 2007).) The court reached the merits of Naranjo's claim as to the sufficiency of the indictment and found the indictment satisfactory because it informed him of the charges. (*Id.* at 4-5.) As to the claim that the trial court erred in finding Naranjo guilty of felony murder, the court found the issue procedurally barred by the doctrine of *res judicata*. (*Id.* at 5-7.) Additionally, the court concluded that Naranjo's claims of ineffectiveness of counsel were meritless. (*Id.* at 8.)

Naranjo appealed the decision of the circuit court arguing that: 1) the indictment did not properly charge a crime; 2) the State failed to prove Naranjo guilty of first-degree murder; and 3) the affirmance of the conviction by the appellate court violated Due Process. (Resp. Ex. I, Pet. App. Br. at 8.) The Appellate Court reached the merits of Naranjo's claim as to the indictment and found that the claim failed because the indictment enabled Naranjo to prepare a proper defense. (Resp. Ex. K, Order of App. Ct., *People v. Naranjo*, No. 1-07-1254, 6 (1st Dist. Mar. 31, 2008).) As to Naranjo's claim that there was insufficient evidence to convict, the court not

only found that the evidence was sufficient, but also concluded that the defendant's challenge failed because "sufficiency of the evidence is not a proper ground for post-conviction relief." (*Id.* at 7 (citing *People v. Todd*, 178 Ill. 2d 297, 309, 687 N.E.2d 998, 1003 (1997).) Lastly, the court held that Naranjo's appeal of the affirmance of his conviction was procedurally barred. (*Id.* at 8 (citing *People v. Enis*, 194 Ill. 2d 361, 375, 743 N.E.2d 1, 10 (2000).) Because the Act requires a challenge to the original conviction, Naranjo's appeal of the Appellate Court's affirmance of his conviction was not a proper ground for relief. (*Id.*)

Following the Appellate Court's affirmation of the lower court's dismissal of his petition, Naranjo filed a PLA with the Supreme Court of Illinois. (Resp. Ex. L, Pet. PLA.) In his PLA, Naranjo raised two issues: 1) the indictment did not set forth all the elements of the offense; and 2) the elements of the offense were not proved beyond a reasonable doubt. The Supreme Court denied the petition. (Resp. Ex. M, Ltr. of Denial, Sept. 24, 2008.)

## DISCUSSION

### I. Procedural Prerequisites

Naranjo puts forward three grounds for relief in his petition. First, he alleges that count 1 of his indictment was insufficient because it did not set forth all the elements of first degree murder. Second, Naranjo contends that the affirmation of his conviction by the Illinois Appellate Court was outside the scope of the first degree murder statute. Third, Naranjo alleges that the State did not prove all the elements of first degree murder beyond a reasonable doubt. (Pet. at 7-10.)

The State argues that Naranjo has not satisfied all of the prerequisites necessary for the court to entertain the second claim of his petition. (Ans. at 6.) Before we may consider a

petition for a writ of habeas corpus on its merits, the petitioner must give the state courts one full opportunity to resolve any constitutional issues by proceeding through the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Crockett v. Hulick*, 542 F.3d 1183, 1992 (7th Cir. 2008); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). Otherwise, the petitioner risks procedural default. *Crockett*, 542 F.3d at 1992; *Malone*, 538 F.3d at 753. And, notwithstanding a petitioner's presentation of federal claims at the state court level, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002) (citing *Stewart v. Smith*, 536 U.S. 856, 860 122 S. Ct. 2578, 2581 (2002); *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)).

In order to give the state courts one full opportunity to resolve federal claims, the petitioner must: 1) exhaust all remedies available in state courts; and 2) fairly present any federal claims in state court. *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citing 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971)). First, "[t]he exhaustion requirement insists that if the state courts have not yet had a full and fair opportunity to consider the petitioner's constitutional claims and remain open to address these claims, the petitioner must take his claims there first." *Cawley v. Detella*, 71 F.3d 691, 693 (7th Cir. 1995) (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 1570 (1982); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir. 1990)).

Second, fair presentment requires that the petitioner show "that he raised the claims being made on habeas during the state proceedings and that he gave the highest state court an

opportunity to address these claims." *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732; *Simpson v. Battaglia*, 458 F.3d 585, 593 (7th Cir. 2006); *Cawley*, 71 F.3d at 693-94 (citations omitted). Thus, the petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (internal citations omitted). For Illinois courts, this requirement applies to petitions for collateral post-conviction relief as well as direct appeals, and so "failure to appeal the dismissal of a post-conviction petition in Illinois state court will ordinarily . . . preempt[ ] further habeas review in federal court." *Cawley*, 71 F.3d at 694.

However, even where a habeas petitioner has failed to properly raise a claim in state court, he can avoid procedural default if either 1) there is "cause" for that failure and actual prejudice as a result of the alleged violation, or 2) procedural default "would lead to a 'fundamental miscarriage of justice.'"[4] *Steward v. Gilmore*, 80 F.3d 1205, 1211-12 (7th Cir. 1996) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506 (1977); *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994), *overruled on other grounds by Hogan v. McBride*, 74 F.3d 144, 147 (7th Cir. 1996); *Mills v. Jordan*, 979 F.2d 1273, 1277-79 (7th Cir. 1992)).

In his petition, Naranjo contends that he was convicted of a "non-existent 'offense'" in violation of the Sixth and Fourteenth Amendment. (Pet. at 9.) Naranjo argues that when the Appellate Court affirmed his conviction on direct appeal because he "set in motion a chain of events" that ended in Salazar's death, they impermissibly expanded the reach of the first degree

---

[4] Naranjo did not raise either of these exceptions and his petition did not indicate that either of the exceptions would be applicable to his case.

murder statute.[5]  (Pet. at 9.)  Naranjo alleges that this interpretation violated his Sixth

Amendment right to know the nature of the claim against him and his right to due process under

the Fourteenth Amendment.  (*Id.*)

Naranjo presented his claim contesting the Appellate Court's affirmance of his

conviction in his direct PLA (Resp. Ex. E at 2), his post-conviction petition (Resp. Ex. G at 10-

13), and his appeal from the circuit court's post-conviction denial  (Resp. Ex. I at 8).  The State

argues that Naranjo first raised the claim in his direct appeal PLA, which "was insufficient to

fairly present it" on direct appeal, and that it was not raised in his post-conviction PLA, which

was insufficient to fairly present it in post-conviction relief.  (Ans. at 7.)  The underlying

principle of the presentment requirement is to ensure that state courts have a meaningful

opportunity to decide the federal claims raised by the petitioner.  *Rodriguez v. Scillia*, 193 F.3d

913, 916 (7th Cir. 1999) (citing *Picard*, 404 U.S. at 275, 92 S. Ct. at 512).  In order for the state

courts to have an opportunity to decide, a fairly presented claim will submit the "operative facts

and the 'controlling legal principles'" on which the court can rule.  *Id.*

In Illinois, to present a claim for one full round, a petitioner must present the claim to the

Appellate Court and in a PLA to the Illinois Supreme Court either on direct appeal or post-

conviction relief.  *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan*, 526

U.S. at 848, 119 S. Ct. at 1734).  Here, Naranjo could not have raised the claim before the

_____

[5] Alternatively, Naranjo's petition also states that the "courts of Illinois" unconstitutionally
expanded the reach of the First Degree Murder statute.  (Pet. at 9.)  However, to the extent that
Naranjo claims that his initial conviction unconstitutionally expands the reach of the First
Degree Murder statute and its proximate cause theory of liability for felony murder, this issue
will be discussed below.

Appellate Court because he is challenging that court's decision.  Naranjo presented his claim both to the Illinois Supreme Court in his direct appeal PLA and to the Illinois Appellate Court in his post-conviction appeal.   Both courts had the opportunity to address the merits of Naranjo's claim.  Therefore, we hesitate to find that Naranjo procedurally defaulted his claim.

However, aside from failing to fully present the claim to state courts, a petitioner's claim is also barred if the state court dismissed the claim on an "independent and adequate state law ground."  *Moore*, 295 F.3d at 774.  This procedural bar occurs when "'a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'"  *Id.* (citing *Coleman*, 501 U.S. at 729-730, 111 S. Ct. at 2554).  The decision of the last state court that reviewed the claim must rest only on the procedural default alone and cannot "rest primarily on the resolution of those claims, or be interwoven with [other] claims." *Moore*, 295 F.3d at 774 (citing *Harris v. Reed*, 489 U.S. 255, 263-65, 109 S. Ct. 1038, 1044-45 (1989); *Coleman*, 501 U.S. at 735, 111 S. Ct. at 2257).  With these principles in mind, we find that Naranjo's claim concerning the constitutionality of the Appellate Court's confirmation is procedurally barred.

Naranjo's claim was dismissed by the Illinois Appellate Court because the "claim did not involve the original conviction and sentence," and therefore "is not a proper claim for relief under the Act."  (Resp. Ex. K at 8.)  Illinois' Post-Conviction Hearing Act, states:

(a) Any person imprisoned in the penitentiary may institute a proceeding under this Article if the person asserts that:

(1) in the *proceedings which resulted in his or her conviction* there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both

725 ILCS 5/122-1(a)(1) (emphasis added). Naranjo must challenge the trial court's proceedings, not the affirmance of his conviction by the Illinois Appellate Court. *See People v. Johnson*, 205 Ill. 2d 381, 388-89, 793 N.E.2d 591, 596-97 (Ill. 2002) (post-conviction petition is a collateral attack on the prior conviction and sentence); *People v. Enis*, 194 Ill. 2d 361, 375-76, 743 N.E.2d 1, 10-11 (Ill. 2000) (same). Because Naranjo is challenging the ruling of the Appellate Court and not the trial court's conviction, this claim is procedurally barred.[6]

## II. Petitioner's Grounds for Relief

Turning now to the merits, we will address Naranjo's two remaining claims. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant Naranjo's request for habeas relief with respect to any claim decided on the merits by the state court only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519 (2000). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519; *Woods v. McBride*, 430 F.3d 813, 816-17 (7th Cir. 2005) (stating that it is difficult to prove unreasonableness); *Harding v. Walls*, 300 F.3d 824, 827-28 (7th Cir. 2002) (recognizing that unreasonable is different from incorrect or erroneous).

---

[6] As the Appellate Court observed, Naranjo pursued the only option open to him when he appealed the Appellate Court's affirmance in his direct-appeal PLA. (Resp. Ex. K at 8.)

-10-

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *Id.* at 410 ("An unreasonable application of federal law is different from an incorrect application."); *see Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003) (same). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004) (explaining that the "question before a federal court on collateral review . . . is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable'"). It is under this standard that we analyze Naranjo's claims.

## A. Illinois Felony Murder Statute and Interpretation

In his two remaining claims, Naranjo is essentially challenging the Illinois courts' interpretation of its first degree murder statute, which follows a proximate cause theory of liability. This statute provides:

> (a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

> (3) He is attempting or committing a forcible felony other than second degree murder.

720 Ill. Comp. Stat. 5/9-1(a)(3) (2003).  The Illinois Supreme Court has interpreted the first

degree murder statute to include a proximate cause theory of liability for felony murder.[7]  In

Illinois, a person who commits a felony is liable for any death that proximately results from his

felonious actions.  *See e.g.*, *People v. Martinez*, 342 Ill. App. 3d 849, 854, 795 N.E.2d 870, 874

(2003); *People v. Hickman*, 59 Ill.2d 89, 94-95, 319 N.E.2d 511, 513-14 (1974).  Therefore, a

defendant can be convicted of felony murder even when the victim of his crime shoots his co-

felon in resistance to the felony.  *See People v. Hudson*, 222 Ill. 2d 392, 406, 856 N.E.2d 1078,

1086 (2006) (upholding a conviction for felony murder where the defendant's co-felon was shot

and killed by an off-duty police officer who was a customer of the business being robbed and

recognizing that it is "immaterial whether the killing in such a case is intentional or accidental or

---

[7] Illinois is not the only state that has adopted a proximate cause theory of liability for felony murder.  *See e.g.*, *Witherspoon v. State*, No. 07 CR 1505, 2009 WL 1164989, at *6 (Ala. Crim. App. May 1, 2009) (upholding conviction of defendant for death of co-felon who was shot by victim of their robbery); *State v. Lopez*, 173 Ariz. 552, 556, 845 P.2d 478, 482 (Ariz. Ct. App. 1992) (finding that even if defendant had been handcuffed or otherwise restrained at the time of the co-felon's death, the conviction stands if he is the proximate cause of that death); *Mikenas v. State*, 367 So.2d 606, 609 (Fla. 1978) (upholding conviction of defendant for death of co-felon who was shot by auxiliary deputy sheriff in course of a robbery); *Palmer v. State*, 704 N.E.2d 124, 126 (Ind. 1999) (upholding conviction of defendant for felony murder when, in attempting to kidnap a police officer to aid co-felon's escape, other police officers shot and killed co-felon); *State v. Ransom*, 207 P.3d 208, 221 (Kan. 2009) (finding defendant can be convicted of felony murder even if the victim was killed by someone other than the defendant or the defendant's agent); *State v. Baker*, 607 S.W.2d 153, 156-57 (Mo. 1980) (en banc) (rejecting defendant's insistence that court adhere to an agency theory of liability and affirming the conviction where the victim's husband shot and killed defendant's co-felon); *State v. Martin*, 119 N.J. 2, 23-25, 573 A.2d 1359, 1370-71 (1990) (finding that amendments to New Jersey statute extended the reach of felony murder rule to homicides committed by someone other than the person committing the felony); *People v. Hernandez*, 82 N.Y.2d 309, 317, 624 N.E.2d 661, 665 (1993) (holding that legislature's change to felony murder statute evidences New York's adoption of proximate cause theory of liability);  *State v. Oimen*, 184 Wis. 2d 423, 428, 516 N.W.2d 399, 401 (1994) (holding that the statute allows defendant to be convicted of felony murder when co-felon is killed by intended victim).

is committed by a . . . third person trying to prevent the commission of the felony" (citations omitted)); *People v. Dekens*, 182 Ill. 2d 247, 252, 695 N.E.2d 474, 477 (1998) (holding that a defendant may be charged under a felony murder theory when an intended victim of the felony shoots and kills the defendant's co-felon); *People v. Lowery*, 178 Ill. 2d 462, 469, 687 N.E.2d 973, 977 (1997) (holding that when the defendant "sets in motion a chain of events" that were or should have been foreseen, he is responsible for any death which proximately results).

Although Naranjo does not challenge the Illinois courts' interpretation of the first degree murder statute explicitly, a finding in his favor on either of the grounds he presents would call into question the application of felony murder in Illinois. Naranjo's insistence that both the indictment and the elements proved at trial should include that "he killed someone" (Pet. at 8, 10) would be in opposition to Illinois' practice of holding defendants responsible even though they did not actually do the killing. *See Hudson*, 222 Ill. 2d at 406, 856 N.E.2d at 1086; *Dekens*, 182 Ill. 2d at 252, 695 N.E.2d at 477; *Lowery*, 178 Ill. 2d at 469, 687 N.E.2d at 977.

In reviewing a habeas corpus petition, it is not our job to re-examine the state court's interpretation of its own state law. We cannot find that a state court wrongly interpreted or applied its own law. Federal issues alone, not state law issues, are cognizable in federal habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991); *see Lambert v. Davis* 449 F.3d 774, 778-79 (7th Cir. 2006) (federal court lacks subject matter over claims regarding misinterpretation of state law); *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (errors of state law are "not cognizable on habeas review"). Accordingly, we can only review whether Illinois courts' interpretation of the felony murder statute violates federal law in its application to the set of facts in Naranjo's case.

Due Process under the Fourteenth Amendment requires that the state's action bear a rational relationship to a constitutionally permissible objective. *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 491, 75 S. Ct. 461, 466 (1955); *Maguire v. Thompson*, 957 F.2d 374, 376 (7th Cir. 1992). Here, the purpose of the Illinois felony murder rule and its proximate cause theory of liability is to prevent inherently dangerous activity. *See e.g. Lowery*, 178 Ill. 2d at 495, 687 N.E.2d at 977 (the differentiation between felonies and felony murder's *forcible felonies* "reflects the legislature's concern for protecting the general populace and deterring criminals from acts of violence"). We find the state's objective in protecting its citizens from violent crime a permissible legislative objective.

The Illinois legislature expressly intended to codify a proximate cause theory of liability in drafting Illinois' first degree murder statute. When the legislature codified the first degree murder statute in 1961, the Committee Comments stated that "it is immaterial whether the killing . . . is intentional or accidental, or is committed . . . even by a third person trying to prevent the commission of a felony." 720 ILCS Ann. 5/9-1, Committee Comments – 1961, at 15 (Smith-Hurd 2002) (citing *People v. Payne*, 359 Ill. 246, 255, 194 N.E. 539, 543 (1935)) [hereinafter Committee Comments].[8]

---

[8] The legislature aimed to codify a theory of proximate cause first upheld by the Illinois Supreme Court in *Payne*. Committee Comments at 15. In that case, the defendant conspired with his co-felons to rob a house of $3,000. *Payne*, 359 Ill. at 249, 194 N.E. at 541. The defendant was not present at the time of the robbery, although he had initiated the plan and identified the house. *Id.* Additionally, it was unclear who shot the victim – one of the co-felons or an inhabitant of the home in an attempt to resist the felony. *Id.* at 250. However, the court held that "[i]t reasonably might be anticipated that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and those attempting to perpetrate the robbery would be guilty of murder." *Id.* at 255. The legislature intended that this holding become law in Illinois through the first degree murder statute. Committee Comments at 15.

The application of the felony murder rule to Naranjo's actions bears a rational relationship to the constitutionally permissible objective of preventing inherently dangerous activity. The Illinois courts held that Naranjo was criminally liable for the death of his co-felon where, during a home invasion, one of the home's occupants shot and killed his co-felon. Naranjo was participating in a violent felony when death resulted. The application of felony murder to this set of facts is not so irrational as to violate the Due Process Clause.[9] *See e.g.*, *U.S. ex rel. Rock v. Pinkey*, 430 F.Supp. 176, 180 (N.D.Ill. 1977), *aff'd*, 582 F.2d 1282 (7th Cir. 1978) (mem.) (holding that the application of Illinois felony murder rule to defendant did not violate the Fourteenth Amendment's Due Process Clause where defendant and his two co-felons were attempting to escape from the scene of a burglary and an officer mistakenly shot and killed a fellow officer while in pursuit of the felons because the application bore a rational relationship to a constitutional legislative objective).

--------------------------------

[9] That Illinois has interpreted the statute's language to include a proximate cause theory of liability is also not irrational. The Indiana Supreme Court has interpreted language similar to the Illinois statute to also incorporate a proximate cause theory of liability. The Indiana statute, Ind. Code § 35-42-1-1(2), reads:

A person who:

(2) kills another human being while committing or attempting to commit arson, burglary, child molesting, consumer product tampering, criminal deviate conduct, kidnapping, rape, robbery, human trafficking, promotion of human trafficking, sexual trafficking of a minor, or carjacking . . .commits murder, a felony.

The Indiana Supreme Court found that "the statutory language 'kills another human being while committing' does not restrict the felony murder provision only to instances in which the felon is the killer, but may also apply equally when, in committing any of the designated felonies, the felon contributes to the death of any person." *Palmer*, 704 N.E.2d at 126. This parallels the interpretation of the Illinois courts. *See Pugh*, 261 Ill. App. 3d at 77, 634 N.E.2d at 36 (recognizing that there is no requirement that the defendant be the same person who commits the felony and performs the act which causes death).

-15-

Because Illinois' application of a proximate cause theory of liability to the facts of Naranjo's case bears a rational relationship to the legislative intent, and the Petitioner has nowhere identified a precedent for finding that the application of a proximate cause theory of liability in his case is unconstitutional,[10] we cannot find that the felony murder rule as applied to Naranjo is unconstitutional.[11]

## B. Indictment

Naranjo alleges that his indictment did not set forth the elements of first degree murder and therefore violated his right to know the nature of the crime charged under the Sixth

---

[10] In his Reply, when discussing his conviction, Naranjo claims that the statute did not provide adequate notice that he would be liable under a proximate cause theory of liability. (Reply at 10.) This challenge to the felony murder rule also fails. *Payne*, 259 Ill. at 255, was decided by the Illinois Supreme Court in 1935. The court held that felons could be found liable for deaths that resulted from resistance to their felony. *Id.* As stated, this holding was codified in the First Degree Murder statute in 1961. Committee Comments at 15. For seventy-four years (since *Payne*), Illinois has adhered to the proximate cause theory of liability, which serves as sufficient notice for the defendant that such liability may result from his felonious actions. *See Bouie v. City of Columbia*, 378 U.S. 347, 352, 84 S. Ct. 1697, 1702 (1964) (*unforeseeable* judicial expansion of statutory language could possibly violate a defendant's constitutional rights), *U.S. v. Mitra*, 405 F.3d 492, 496 (7th Cir. 2005) (court cannot "apply a clear criminal statute in a way that a reader could not anticipate, or put a vague criminal statute to a new and unexpected use"); *also U.S. ex rel. Rock*, 430 F.Supp. at 181 (finding that the application of the felony murder rule was not "so shockingly in contravention of preexisting notions and policies in the law as to call into play the protective force of the Fourteenth Amendment" (citations omitted)). And, before Naranjo's actions, the Illinois courts had already expanded the proximate cause theory to a similar case where the death was of a co-felon committed by a person resisting the felony. *Dekens*, 182 Ill. 2d at 252-53, 695 N.E.2d at 477; *Lowery*, 178 Ill. 2d at 469, 687 N.E.2d at 977.

[11] Neither the Supreme Court nor the Seventh Circuit has directly addressed whether a proximate cause theory of liability is a constitutionally permissible interpretation of felony murder statutes such as Illinois'. However, the Supreme Court has addressed the proximate cause theory of liability in felony murder with respect to the availability of the death penalty. *Edmund v. Florida*, 458 U.S. 782, 797, 102 S. Ct. 3368, 3376 (1982). In that case, the Court found that a death penalty sentence based on a felony murder conviction is unconstitutional where the sentence is imposed upon someone who "does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Id.* (vacating defendant's death penalty sentence since his only participation in the felony was driving the getaway car).

Amendment and his right to due process of law under the Fourteenth Amendment. (Pet. at 8.) Specifically, Naranjo contends the indictment failed to state that he killed anyone or performed the acts which caused the death of anyone. (Reply at 7.) In reviewing this claim, the Appellate Court relied on the rule set forth in 725 ILCS 5/111-3 of the Code of Criminal Procedure, which requires that the indictment "state[] the name of the offense, the statutory provision alleged to have been violated, the nature and elements of the offense charged, the date and county of the offense, and the name of the accused, if known." (Resp. Ex. K at 5.) The Court determined that Naranjo's indictment allowed him to prepare a proper defense and therefore his claim failed. *Id.* We conclude that the Illinois court's holding was neither "contrary to" nor an "unreasonable application" of federal law, nor was it a "decision based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

In determining whether the state court's decision was contrary to federal law, the applicable federal standard is applied to the facts of the case. *Williams*, 529 U.S. at 384, 120 S. Ct. at 1508 ("Most constitutional questions that arise in habeas corpus proceedings-and therefore most "decisions" to be made-require the federal judge to apply a rule of law to a set of facts."); *Curtis v. Montgomery*, 552 F.3d 578, 581 (7th 2009) (measuring whether state court's determination is unreasonable by applying federal standard to the facts). Accordingly, an indictment is sufficient if it 1) contains the elements of the offense and informs the defendant of the charge; and 2) allows the defendant to bar future prosecution for the same offense by pleading acquittal or conviction. *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974); *U.S. v. Ramsey*, 406 F.3d 426, 429-30 (7th Cir. 2005). Count 1 of Naranjo's indictment read:

> [O]n or about October 4, 2002 at and within the County of Cook Edgar Naranjo committed the offense of First Degree Murder in that he, without lawful justification committed a forcible felony, to wit: home invastion, and during the commission of the offense of home invasion, Juan Salazar was shot and killed, in violation of Chapter 720 Act 5 Section 9-1(a)(3).

(Resp. Ex. N., Grand Jury Indictment, 2.)  Illinois does not require that the person who committed the felony be the same person as the one who performs the act which causes death. *See e.g.*, *Hudson*, 222 Ill. 2d at 406, 856 N.E.2d at 1086;  *Dekens*, 182 Ill. 2d at 252, 695 N.E.2d at 477; *Lowery*, 178 Ill. 2d at 469, 687 N.E.2d at 977; *Pugh*, 261 Ill. App. 3d at 77, 634 N.E.2d at 36.  Therefore, contrary to Naranjo's claim, it is not necessary that the indictment state that Naranjo killed Salazar as an element of the crime.  *Hudson*, 222 Ill. 2d at 406, 856 N.E.2d at 1086 (in fact situations where the person resisting the felony shoots and kills a co-felon, the defendant can be charged with Felony Murder).

An indictment is sufficient when it "sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished."  *United States v. Torres*, 191 F.3d 799, 805 (7th Cir. 1999) (citing *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981)).  Here, the indictment contains the elements of the offense from the statute: Naranjo recruited Salazar to help him with the home invasion, committed the home invasion, a forcible felony, and, during the course of that felony, Salazar was killed.  Naranjo had sufficient notice that he would be charged with Salazar's death, which enabled him to prepare a defense for that charge.  Because the indictment informed Naranjo of the charge against him, it does not violate Naranjo's Sixth or Fourteenth Amendment rights.

## C. Proof of Elements of Felony Murder at Trial[12]

## 1. Applicable Standard

Naranjo contends that the State failed to prove him guilty beyond a reasonable doubt under 28 U.S.C. § 2243 (Reply at 14), which states that the court will "summarily hear and determine the facts, and dispose of the matter *as law and justice require*." (emphasis added.) This is a more lenient standard than under 28 U.S.C. § 2254, which usually governs state prisoner petitions for writ of habeas corpus. Section 2254 states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This section will govern a state prisoner's petition unless the state court failed to reach the merits of the federal claim. *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004). Moreover, in evaluating the scope of the state court's review, § 2254 does not require the state court to discuss the claim with reference to federal law as long as the standard it applied "was as demanding as the federal standard." *Id.* The state court does not have to cite, or even be aware of, Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002).

_____

[12] The State argues that this claim is noncognizable as a state law claim. (Ans. at 10.) It is true that the federal courts cannot review a state court interpretation of state law. *Lambert*, 449 F.3d at 778-79. However, we do not analyze this claim as a challenge to Illinois' interpretation of the felony murder rule. We are only considering the sufficiency of the evidence in light of the federal standard.

The merits of the claim will still be deemed decided by the state court even if the state court noted a procedural defect. *Cf. Braun v. Powell*, 227 F.3d 908, 916-17 (7th Cir. 2000) (explaining that where a claim is *wrongly dismissed* on procedural grounds, the State court has not "reached the merits" and the standard of review is 28 U.S.C. § 2243); *Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998) (same). Here, although the Appellate Court alternatively noted a procedural problem with the claim, it did reach the merits of Naranjo's challenge to the sufficiency of the evidence. (Resp. Ex. K at 7.) For example, the Appellate Court explained that the "defendant overlooks the principle that when a defendant is charged with felony murder . . . the State need not prove that he performed the acts which caused the death of the victim, but merely that his actions were the proximate cause of the resulting death." (Ex. K at 6-7.) The Appellate Court then went on to recount the details of the crime and determined that "[s]ince the co-felon's death was a foreseeable consequence of the residential burglary, defendant was properly charged with felony murder regardless of the guilt or innocence of the off-duty police-officer's actions." (Ex. K at 7.) Because the Appellate Court reached the merits of Naranjo's claim, it will be reviewed under the standard set forth in 28 U.S.C. 2254(d).[13]

**2. Merits**

Reaching the merits of the claim, we find that the Illinois Appellate Court's decision was neither "contrary to" nor an "unreasonable application" of Supreme Court precedent. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781 (1979), requires a court to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

---

[13] It is unlikely that reviewing Naranjo's claim under the more lenient "as law and justice require" standard of 28 U.S.C. § 2243 would yield a different result since the element that Naranjo alleges is not proven by the State is not an element that the State needed to prove.

found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S. Ct. at 2789. Although the Appellate Court did not use these words, applying the *Jackson* standard, we arrive at the same outcome.

Naranjo alleges that the State did not prove that he killed anyone. (Pet. at 10.) However, as the Illinois Appellate Court stated "the State need not prove that he performed the acts which caused the death of the victim, but merely that his actions were the proximate cause of the resulting death." (Resp. Ex. K at 7 (citing *Hudson*, 222 Ill. 2d at 402-403, 856 N.E.2d at 1084.) As discussed earlier, the Illinois statute does not require that the person who commits the felony be the same person as the one who performs the act that causes death. *Pugh*, 261 Ill. App. 3d at 77, 634 N.E.2d at 36. The Seventh Circuit, in discussing the requirements of a felony murder jury instruction, has stated that Illinois courts have broadly interpreted the felony murder doctrine and "'a felon is responsible for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts.'" *Jenkins v. Nelson*, 157 F.3d 485, 492 (7th Cir. 1998) (citing *People v. Graham*, 132 Ill. App. 3d 673, 679, 477 N.E.2d 1342, 1346 (1985)). Additionally, although causation is an essential element of felony murder, "the defendant's acts need not be the sole and immediate cause of death, but they must have been a contributing factor." *Id.*; *see e.g. Donaval v. Chandler*, No. 05 C 1501, 2005 WL 2989884, at *13 (N.D. Ill. Nov. 4, 2005) ("The State does not have to prove beyond a reasonable doubt that the Defendant personally killed the victim; it merely needs to prove that the death was a 'direct and foreseeable consequence' of committing the felony."). Accordingly, the state need not prove beyond a reasonable doubt that Naranjo shot and killed Salazar, only that his actions were a contributing factor to Salazar's death.

Under the *Jackson* standard, which requires that any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt, we find the trial judge had sufficient evidence to find Naranjo guilty of first degree murder. When a defendant enlists the help of a 14-year old and together they carry out a home invasion, resistance by the inhabitants of the home and harm to either of the co-felons is foreseeable and likely. Because Naranjo's call to the home before his actions took place meant he knew that the Balbontins were at home at the time he planned to rob them, the likelihood was even greater.

**CONCLUSION**

Naranjo's petition for writ of habeas corpus is denied. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Date: July 27, 2009